IN RE:                                          CASE NO. 11-11585-JKO
                                                CHAPTER 13
**MARY C. LEMMON,**

    Debtor.

_____/

## NON-PARTY ATTORNEY, MARGERY GOLANT, ESQ.'S, AND ROBERT GINDEL, ESQ.'S MOTION TO RECUSE AND MEMORANDUM OF LAW IN SUPPORT

Non-Party Attorney, Margery Golant, Esq. ("Mrs. Golant"), and Robert Gindel, Esq. ("Mr. Gindel") (collectively referred to as "Movants"), by and through undersigned counsel and pursuant to 28 U.S.C. § 455(a) and (b), 28 U.S.C. § 144, and the Code of Judicial Conduct for United States Judges, Canons 2 and 3, move that this Court recuse itself from presiding over this proceeding, and vacate the Orders to Show Cause [DE-43, DE-45, and DE-65], and in support of the motion, state as follows:

### INTRODUCTION

1.    This is a closed case [DE-34 and DE-40] where the Chapter 13 Trustee, Robin Weiner ("Ms. Weiner"), has been discharged, effective June 30, 2011 [DE-41]. Previously, on May 27, 2011 Mr. Gindel had appeared as counsel for Debtor Mary C. Lemmon ("Ms. Lemmon") [DE-36] and filed a Motion to Reinstate her case [DE-37], setting a hearing for July 13, 2011. Thereafter, the Ms. Lemmon was non responsive so Mr. Gindel withdrew the motion and cancelled the hearing. On July 13, despite the cancellation of the hearing, Ms. Lemmon appeared at the Courthouse, and the Trustee had direct conversations with her about this cause. [DE-42.] In violation of applicable

Bar rules or ethical standards, and without any notice to Mr. Gindel, Ms. Weiner called Judge Olson out of chambers and initiated an ex-parte "proceeding" [DE-56] where she imposed upon Judge Olson to initiate a sanctions investigation in a closed case. [DE-43]. Concurrently, Ms. Weiner had been threatening Mr. Gindel that unless he would refrain from litigating certain issues within the Chapter 13 bankruptcy cases he filed, she "run him out of the Bankruptcy Court". Accordingly at Ms. Weiner's request and although no hearing was then scheduled Judge Olson nevertheless convened the proceeding, gave no notice to Mr. Gindel, then allowed Ms. Weiner to make unfounded accusations without a fair opportunity for cross-examination or hearing any contrary evidence or even any competent or admissible evidence at all. [DE-55.] At Ms. Weiner's urging, Mary Lemmon testified in a rambling and confusing narrative, leading Judge Olson to issue an Order scheduling a formal Show Cause hearing. [DE-45].

2.      At the initial hearing on Order to Show Cause, Judge Olson again allowed Ms. Weiner to put on misleading, unsupported, incompetent and inadmissible "evidence", allowed Ms. Lemmon to make another rambling statement, and stifled any response from Movants. Judge Olson then reset the matter for a lengthy evidentiary hearing where it overruled objections to Ms. Lemmon's improper "testimony", and itself interposed objections and examination. At that hearing Mr. Gindel made a full presentation, and absolutely none of the evidence indicated any wrongdoing on his part. Nevertheless, Judge Olson entered the subject Order [DE-65], containing nebulous and unfounded assertions that movants has somehow violated Florida Bar rules. A copy was sent to the Florida Bar. The subject Order expands the show cause inquiry to Margery Golant, who was merely a witness at the August 29th, 2011 Show Cause hearing and who was never been a party or attorney

in any bankruptcy proceeding in this District. Although the prior show cause hearing was concluded with a full presentation from all considered, it is clear that the purpose of the continued show cause is to attempt to find some evidence to support Judge Olson's predetermined and unfounded conclusion that movants are guilty of some sort of wrongdoing.

3.     As this Court has effectively taken on the role of prosecutor in this matter, and developed "facts" in an ex parte, extrajudicial proceeding, this Court must step down as adjudicator of these issues.

4.     Movants have moved for Reconsideration on the orders to show cause, however, for the reasons set forth herein, Judge Olson should recuse himself, and vacate those Orders. An affidavit of Margery E. Golant stating the facts and the reasons for the belief that bias or prejudice exists were filed to DE-67, as Exhibit 1 and an affidavit from Movant Robert C. Gindel, Jr. stating the facts and the reasons for the belief that bias or prejudice exists were filed to DE-67, as Exhibit 2. Both affidavits are incorporated herein by reference.

### FACTS

5.     This case began as a routine Chapter 13 Bankruptcy Petition filed by Ms. Lemmon on January 21, 2011. [DE-1]. The matter was assigned case number 11-11585-JKO. The petition was dismissed by Court order on April 11th, 2011. [DE-30].

6.     When the Chapter 13 petition was filed, Ms. Lemmon was represented by attorney Stuart Golant ("Mr. Golant") . On April 7th, 2011, this Court entered an order in a separate case (which was "tagged for publication") suspending Mr. Golant from bankruptcy practice, and directing him to procure substitute counsel for all of his bankruptcy clients. *In Re Lott*, 2011 WL 1398995

*2-3 (Bankr. S.D. Fla. April 7th, 2011).

7.     Arrangements were made for Mr. Gindel to meet with Ms. Lemmon herein and a check was prepared to Ms. Lemmon to refund the fees in the amount of $3,500. See [DE-67-1, Affidavit of Margery Golant] and [DE-67-2, Affidavit of Robert Gindel] as well as Amended Affidavits, attached as Exhibits 1 and 2. At the meeting, it was thought by Mr. Golant, Mrs. Golant and Mr. Gindel, that the check written on the Golant and Golant, P.A. firm account was tendered to Ms. Lemmon, but evidently it was inadvertently put in the file where it was discovered months later, on July 13, 2011, when Mrs. Golant received a telephone call on the issue. It was immediately tendered to Ms. Lemmon on July 13, 2011 and was cashed on the very same day. See [DE-67-3, Check Dated July 13, 2011, Receipt of Check Dated July 13, 2011, and Statement by Mary Lemmon] and [DE-67-4, Wells Fargo Proof of Check Deposit].

8.     Following the referenced meeting which occurred on April 26, 2011, Mr. Gindel was expecting that he would hear back from Ms. Lemmon and that she would retain him, as had been specifically discussed. (See Exhibit 2 at 13-14.) However, he did not hear from her and was therefore uncertain as to how to proceed. Mr. Gindel attempted to contact Ms. Lemmon but ultimately concluded that he should file a motion to reinstate her case, since that was what had been discussed with her, so that her position was protected, on the assumption that he could dismiss the motion without prejudice in the event that he was not going to proceed with the representation or that Ms. Lemmon was not going to proceed with the Bankruptcy, but that, during the interim time, Ms. Lemmon's interests would be protected. [DE-67-2 at ¶¶ 13 and 14].

9.     Staff members of Golant & Golant, P.A. attempted, numerous times, to contact Ms.

Lemmon, but were unsuccessful. See Exhibit Register [DE-60] and [DE-67-5, Affidavit of Carrie Trumbach.]

10.    Notwithstanding the lack of followup by Ms. Lemmon, Mr. Gindel filed a motion to reinstate on behalf of Ms. Lemmon [DE-37]. When he never heard from Ms. Lemmon, on July 12, 2011, the day before the hearing, he withdrew the motion, without prejudice [DE-42]. See [DE-67-2 at ¶ 28].

11.    On the morning of July 13, 2011 Mr. Gindel and Ms. Weiner met in court with regard to another case. During that meeting, Ms. Weiner spoke to Mr. Gindel about that other case, and had a dispute with Mr. Gindel "on the record, where she in fact, she took issue on the record of the consumer protection litigation tactics [Mr. Gindel] was utilizing in my Chapter 13 cases." See Exhibit 2 at ¶ 33.

12.    At 11:04 a.m. on July 13, 2011, attorney Michael Gulisano ("Mr. Gulisano") sent Mr. Gindel an email explaining that Ms. Lemmon had contacted him, was upset, had questions about her case, and was unsure whether to attend the hearing. See [DE-67-6, communications between Mr. Gulisano and Mr. Gindel on August 13-14, 2011]. Relieved that he finally had some vehicle for communicating with Ms. Lemmon, minutes later, Mr. Gindel called Mr. Gulisano, (see iPhone record of call to Mr. Gulisano in [DE-67-6]), and advised him that the hearing had been cancelled. During that conversation, Mr. Gindel explained that there were complicating factors regarding Mrs. Lemmon's legal position. See [DE-67-2] and email on July 14, 2011 at 5:08 a.m. in [DE-67-6]. As a result of the conversation between Mr. Gindel and Mr. Gulisano, it was agreed that under the circumstances withdrawal of the Motion to Reinstate was in fact the most reasonable action, and that

therefore there was no reason for Ms. Lemmon to appear at the Courthouse that afternoon.

13.     On the afternoon of July 13, 2011, Mr. Gindel did not appear at the Courthouse because he had nothing pending at that time. However, unbeknownst to Mr. Gindel, Ms. Lemmon did appear, notwithstanding Mr. Gindel's discussion with Mr. Gulisano. It is evident from the transcript that Ms. Lemmon had communications with Ms. Weiner concerning the issue of reinstatement and that Ms. Weiner did not contact Mr. Gindel. (Transcript 1:6-9, 1:25-2:9). Instead, Ms. Weiner unilaterally asked that Judge Olson come out of chambers and "call the case out of order", although there was no longer a hearing scheduled. Although Mr. Gindel was not present, it was obvious from the transcript that Ms. Weiner arranged from Ms. Lemmon to offer poorly articulated complaints about Mr. Gindel, and that in exchange for that testimony Ms. Weiner would use the influence her office carries to procure a free attorney for Ms. Lemmon. [Exhibit 3, Transcript of July 13th,2011 p. 8 lines 12-21]

14.     Although there was no hearing scheduled and although Mr. Gindel was not present, and no effort was made to contact Mr. Gindel, Judge Olson convened a "hearing" on an ex-parte basis. At this "hearing" Judge Olson allowed Ms. Weiner to paraphrase what she expected Ms. Lemmon would say and to do this in Ms. Lemmon's presence. Judge Olson indulged Ms. Weiner's improper request that Ms. Lemmon be allowed to testify, and allowed her to address Judge Olson ex parte in a narrative. It is evident from the transcript that Ms. Weiner had prior knowledge from Ms. Lemmon about what Ms. Lemmon would say if called to testify [Transcript 1:6-9, 1:25-2:9], and that Ms. Weiner orchestrated the entire event while simultaneously abusing her position to obtain a free attorney for Ms. Lemmon in exchange for her testimony. The entire time, Ms. Weiner was

making disparaging remarks concerning Mr. Gindel and Mr. Golant. As noted above, specifically because she had this knowledge. Ms. Weiner had also evidently (a) solicited other attorneys present for the motion calendar to make offers to represent Ms. Lemmon, pro bono, (b) communicated with Ms. Lemmon such that Ms. Lemmon was prepared to make statements to Judge Olson, (c) failed to communicate with Mr. Gindel that any of this was happening, (d) called Judeg Olson out of chambers for a special ex parte "proceeding" involving Ms. Lemmon when nothing was pending and Debtor's counsel was not present and (e) failed to advise Judge Olson that Mr. Gindel was not scheduled to be present at this time, was not expected to be present at this time, had not been notified that Ms. Lemmon had appeared, nor of these communications, nor of the proceeding.

15.    After Judge Olson was unilaterally called out of chambers by Ms. Weiner for this "proceeding", Ms. Weiner addressed Jude Olson, making various inflammatory hearsay statements and advising Judge Olson, in Ms. Lemmon's presence, what the substance of Ms. Lemmon's testimony would be, then Ms. Lemmon was permitted to testify in a confusing narrative, then Ms. Weiner addressed Judge Olson a second time stating:

> I have a number of very seasoned attorneys who have offered to take this case on a pro bono. Raise your hand if you've offered to do so. Is there anyone else who would be interested in taking this pro bono? They are all willing to help this debtor out. I don't want to see her lose her home because of Golant, Gindel and whomever else that she's dealt with. Could we do something here to help her, **even though he's withdrawn the motion.**

[DE-56 at p. 8, 4-21 (emphasis supplied).][1]

_____

[1] Note that Ms. Weiner acknowledged on the record and to the Court that Mr. Gindel had withdrawn the motion. As is demonstrated by the transcripts, affidavits and exhibits submitted, this entire charade was founded upon the fact that the fee reimbursement check that was prepared for the Debtor was inadvertently left in the file, yet as soon as the oversight was discovered, the Debtor received her check and deposited it that same day. Ms. Weiner's

16.     The record conclusively demonstrates that Ms. Weiner communicated with the Debtor outside of the presence of her attorneys in violation of Florida Bar Rule 4-4.2(a), which generally prohibits an attorney from communicating with an individual that a lawyer knows is represented by an attorney concerning the subject matter of that representation.  Furthermore, Ms. Weiner's own statements also demonstrate that she offered to use the influence carried by her office to procure valuable pro bono legal representation for Ms. Lemmon. Under the circumstances, it was clear that Ms. Weiner engaged in this inappropriate conduct in order to obtain an advantage against Mr. Gindel, and eventually utilized this same inappropriate conduct against Mrs. Golant who was neither a party to the case, nor counsel, nor even an attorney that has ever practiced bankruptcy in bankruptcy court in this District.

17.     During that same July 13th, 2011, motion calendar, another attorney, who was present on another matter, contacted Mrs. Golant and advised her of what was occurring.  She immediately investigated what had happened to the subject check, located it, and made arrangements to have the check delivered to Ms. Lemmon.  See [DE-67-1 at ¶ 34].  In fact, the check was delivered that same day and Ms. Lemmon cashed it immediately.  See [DE-67-3] and [DE-67-4].  Therefore, an inadvertent mistake by Mr. Golant was immediately corrected by Mrs. Golant.  See [DE-67-1].

18.     Following the July 13th, 2011 hearing, Judge Olson entered an Order To Show Cause, [DE-43].  The Order to Show Cause indicates that Movant Mr. Gindel will be expected to show cause whether he should be sanctioned "...for failing to properly represent his client." [DE-43, p. 2].  The order also directs Mr. Golant to "...articulate cause why he should not be adjudged

---

handling of the matter was an inappropriate pretext to attack Mr. Gindel, and this Court should not have allowed itself to be party to it.  At this point, however the appropriate action for this Court is vacatur and recusal.

in contempt of court for failing to comply with the April 7th, 2011 order and for falsely certifying that he had complied with the terms of the order. [DE-43, p.2]. The Show Cause hearing was initially scheduled for July 26th, 2011. [DE-43, p.3]. The parties appeared, and the transcript reflects a circus atmosphere where Judge Olson invited Ms. Weiner to address the Court, saying "Ms. Weiner, what do you know?" Ms. Weiner took advantage of Judge Olson's invitation, continuing to make improper and malicious hearsay representations about Movant Mr. Gindel and about Mr. Golant and then, later, about Mrs. Golant, as well, all without presenting any evidence. In fact, Ms. Weiner's assertions consisted of nothing but unsubstantiated hearsay and invective. [DE-55 p.9, ln.9, and p.10, ln. 13.]

19. Ms. Weiner concluded her monologue by asserting, without any foundation or evidence, that Movants' involvement with Mr. Golant was "very suspicious." [DE-55, p.10, ln. 12-13.] Without providing an adequate opportunity to cross examine, rebut or respond, Judge Olson then asked Ms. Weiner for a suggestion as to how the issue should be handled. *Id.* at p. 10, ln. 14. Among her other suggestions, Ms. Weiner suggested that "Mr. Gindel needs to be investigated as to what his relationship is with a suspended attorney, whether fees are being paid to Mrs. Golant." *Id.* at p. 10, ln. 15. Tellingly, Ms. Weiner concluded her remarks by stating "you might even want [Ms. Lemmon] to take the stand, Your Honor, because there is more -- obviously I don't have knowledge of, but there is more that you need to hear." *Id.* at p. 11, ln. 5-9. Thereafter an attorney named Christian Olson ("Mr. Olson"), who had apparently been procured by Ms. Weiner to represent Ms. Lemmon, offered his own monologue during which he stated that his "...advice to [Ms. Lemmon] was to leave the case dismissed because if we had to start from month one, there would

be no way [Ms. Lemmon] could make the payments." *Id.* at p. 11, ln. 5-9. During his monologue, Mr. Olson also made a number of inaccurate assertions concerning the matter. All of these are discussed below in the context of the subsequent hearing.

20.     Following Mr. Olson's monologue, Mrs. Golant was permitted to speak for a very short time. *Id.* at p. 13, ln. 19; p. 14, ln.2. However, Judge Olson abruptly cut her off, and stated that the matter would be continued. *Id.* at p. 14, ln. 3-4. Even before Mr. Gindel had any opportunity to confront the highly prejudicial and grossly inaccurate hearsay statements from Ms. Weiner and Mr. Olson, Judge Olson indicated that he had already made up his mind stating, inter alia, that the purpose of the next hearing would be to "take evidence" and to "consider carefully what sanctions are appropriate in these circumstance..." *Id.* at p. 14, ln. 7-8. Notably, the Court did not indicate that it was even considering the possibility that there was no basis for any sanctions. The hearing was continued until August 29th, 2011.

21.     At the August 29th, 2011 hearing, the Bankruptcy Court opened the proceedings by stating:

> We're here on a continued order to show cause. Mr. Golant was ordered to disburse, or to reimburse, rather, his fee to Ms. Lemmon. He did not do so, but swore to me in pleadings that he had, and apparently paid the money over to Mr. Gindel, who -- I'm not sure who it was who filed the motion to reinstate Ms. Lemmon's case, but Mr. Gindel, without contacting Ms. Lemmon, withdrew the motion to reinstate the case, without consulting her, or informing her. Nobody has paid the money back to -- as of the last hearing, to Ms. Lemmon, and I'd like some more explanations for what on earth these purported lawyers think they're doing. [DE-62, p.5, ln 12-25].

As the argument and evidence presented during the August 29th, 2011 proceedings demonstrated however, it is simply not true that the funds had been paid to Mr. Gindel instead of to Ms. Lemmon.

Furthermore, it was also not true that Mr. Gindel withdrew the motion to reinstate the Chapter 13 bankruptcy without making any effort to consult with Ms. Lemmon, nor is it true that Mrs. Lemmon was not "informed" of the withdrawal of the motion or of the cancellation of the hearing. To the contrary, after making his best efforts to contact her, Mr. Gindel determined that proceeding with the Chapter 13 bankruptcy petition at that time would not be in Ms. Lemmon's best interest, and had expressly discussed this with Mr. Gulisano, an attorney acting on behalf of Ms. Lemmon, prior to the hearing. Accordingly, by withdrawing the motion to reinstate, he appropriately preserved the option for her to proceed with a future Chapter 13 bankruptcy if circumstances warranted, and Mr. Gulisano was aware of the withdrawal and the cancellation. Notably, as discussed above, this was consistent with the advice given by her "pro bono" counsel Mr. Olson because she was unable to fund a plan. As also discussed in more detail below, Ms. Lemmon herself testified that she had decided not to proceed with Chapter 13 bankruptcy.

22.     At this hearing, Movant Mrs. Golant explained that she had arranged for the attorneys' fees paid to Stuart Golant to be reimbursed, had written the check, but due to inadvertence, apparently Mrs. Lemmon failed to actually receive the check at that April meeting. See [DE-67-1 at ¶ 34] and Exhibit 1 at ¶ 34. Accordingly, at the time Mr. Golant filed the notice advising the Court that the funds had been returned, Mr. Golant reasonably believed that to be true. Notably, all of the evidence was entirely consistent with Movants' position that Mr. Gindel had done nothing wrong, and that Mrs. Golant's only involvement with Ms. Lemmon in this case was to introduce Ms. Lemmon to Mr. Gindel (consistent with the same bankruptcy judge's express direction in *In Re Lott*), advise them with regard to certain available consumer mortgage programs, and to

prepare a check for delivery to Ms. Lemmon.

23.     Mrs. Golant and Mr. Gindel assert in their affidavits that Ms. Weiner has the ability to unduly influence Judge Olson. [DE-67-1 at ¶ 66; DE-67-2 at ¶ 63] Exhibit 1 at ¶¶ 63 and 64, Exhibit 2 at ¶¶ 18, 56 and 63, that she had threatened Mr. Gindel with this fact, and that she asserted she intended to utilize her ability to influence Judge Olson to prevent Mr. Gindel and Mrs. Golant from being able to practice in the Southern District of Florida Bankruptcy Court due to her objection to their intention of raising litigated matters in that court, and that she intended to use the Lemmon matter to accomplish this objective. On August 29th, 2011, "the judge had acted in a belligerent and dismissive manner toward [movants], toward Stuart Golant and toward his attorney Jeffrey Golant ... allowed Weiner to make numerous unsworn, non-factual assertions, and then adopted them although there was no evidence at all to support them, and he made his own unsolicited objection during the questioning of Lemmon by Jeffrey Golant", Stuart Golant's attorney. [DE-67-1 at ¶ 71; DE-67-2 at ¶ 68], Exhibit 1 at ¶ 69, Exhibit 2 at ¶ 68.

24.     At the conclusion of the August 29th, 2011 hearing, Judge Olson indicated that an Order would be entered. [DE-62, p. 86, ln 20-21]. On September 29th, 2011, Judge Olson entered the subject Order [DE- 65]. The subject Order improperly asserts, without any supporting evidence that Movants Mr. Gindel and Mrs. Golant "willfully conspired" both to avoid the order directing Mr. Golant to disgorge attorneys fees paid by Ms. Lemmon and to "avoid the court's prohibition of bankruptcy practice by Stuart Golant," [DE- 65, p.4]. In addition to accusing Movants of engaging in a nebulous "conspiracy", again without any supporting evidence, this Order concludes by asserting that "Mr. Gindel and M[r]s. Golant appear to have engaged in deceptive behavior which may render

them a 'potentially serious danger to the public.' The continued show cause hearing will address potential sanctions, including but not limited to suspension from practice before this court." [DE-65, p. 8].

25. This Court's Order of September 29th, 2011, [DE-65], stated it would refer the sanctioning matter of Mr. Golant to The Florida Bar. At the same time, it referred Mrs. Golant and Mr. Gindel to The Florida Bar by making (unsupported) findings and sending a copy of the Order to The Florida Bar.

26. Since the July 13th, 2011 hearing, Movants have defended themselves against unfounded attacks by this Court and Ms. Weiner. Through the ex parte proceeding on July 13, 2011, the communication with Ms. Lemmon without notifying Mr. Gindel, the entry of orders to show cause suggesting sanctions that include suspension from the bankruptcy bar, and referrals to The Florida Bar, this Court has conducted itself as a co-prosecutor with Ms. Weiner. Movants assert that this prosecutorial conduct has been overzealous, improper, completely lacking due process, and that it is clear that the Court does believe he has knowledge of highly disputed facts and it will not be dissuaded by undisputed evidence to the contrary. Furthermore, these proceedings were instigated by Ms. Weiner for a malicious purpose, and in violation of Florida Bar ethical standards. A review of the relevant transcripts and Orders reflect that Ms. Weiner is in fact able to exert inappropriate influence on Judge Olson, and she has made good on her threats to use that influence against Movants. Accordingly, Judge Olson may no longer sit as an impartial judge of the issues remaining and cannot continue to rule in this post-dismissal case. Movants assert that there is no longer any appearance of impartiality.

27.     Movants assert in their affidavits that this "conduct appears to represent a pattern whereby Judge Olson denied parties due process, intimidates and abuses them, and also coerces their counsel." [DE-67-1 at ¶ 70; DE-67-2 at ¶ 67], Exhibit 1 at ¶ 68, Exhibit 2 at ¶ 67, and in fact, the language of the Order of September 29, 2011 [DE-65] to Show Cause parallels other orders issued by Judge Olson in other, completely unrelated matters, which are consistent with that pattern of intimidation, abuse and denial of due process.

28.     Judge Olson has empowered Ms. Weiner to convey that she is in a special position of influence with this Court, and Weiner then utilizes that special position in order to achieve improper objectives, which this Court then allows and facilitates. This improper influence has become pervasive in these proceedings and they are therefore irredeemably tainted.

29.     Movants assert that they "sincerely and profoundly believe that [they] will not receive a fair hearing in front of Judge Olson." [DE-67-1 at ¶ 65, 66, 70, 72; DE-67-2 at ¶ 63, 69]; Exhibit 1 at ¶¶ 60, 63, 64, 68 and 70; Exhibit 2 at ¶¶ 60, 63, 67 and 69. Movants assert that this Court, through its extra-judicial and influential relationship with Ms. Weiner, is inappropriately attacking the reputation of Movants and their respective law firms, through a series of improper proceedings and unfounded orders, without cause, and is clearly seeking to prevent them from bankruptcy practice, which squares exactly with Ms. Weiner's stated agenda, and this Court must recuse itself from further proceedings.

30.     There would be no prejudice to any party or claimant if this Court recuses, because the bankruptcy proceeding stands dismissed, and has not been reopened for the the Debtor.

**WHEREFORE**, Movants respectfully request that this Court enter an Order recusing itself,

and vacating the orders to show cause, and for any other relief which this Court considers just and equitable.

## MEMORANDUM OF LAW

31.    Federal Rule of Bankruptcy Procedure 5004 states "[a] bankruptcy judge shall be governed by 28 U.S.C. §455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case." The Code of Judicial Conduct for United State Judges, Canons 2 and 3, mirror the requirements of 28 U.S.C. § 455. Public trust in the integrity of the judicial system is paramount, and no appearance of impropriety, particularly in federal courts, is countenanced. Additionally, 28 U.S.C. § 144 is aimed at recusing a judge for actual bias, as well as the appearance of impropriety and states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

*See Infolink Communication Services, Inc., v. Dillworth,* 2011 WL 2580397 (S.D.Fla. June 28, 2011). [2]

## I.    THE COURT SHALL BE RECUSED IN A PROCEEDING IN WHICH THE JUDGE'S IMPARTIALITY MIGHT BE REASONABLY QUESTIONED OR DISPLAYS PERSONAL BIAS

---

[2] Undersigned counsel recognizes that this Court has specifically held that section 144 does not apply to bankruptcy judges, and that view is shared by some other bankruptcy judges. However, a good faith argument is made that a United States Bankruptcy Court Judge, as acting upon delegated authority from the district court, answers to the same standard of conduct as a United States District Court Judge. Additionally, the Chief Judge of this District performed an extensive analysis on the issue of recusal pursuant to section 144 in connection with a Motion for Recusal of a bankruptcy judge. Presumably if the Chief Judge of this District felt that section 144 was inapplicable to bankruptcy judges, he would have so stated in that opinion. *See Infolink Communication Services, Inc., v. Dillworth,* 2011 WL 2580397 (S.D.Fla. June 28, 2011).

32.     Section 455(a) requires the recusal of a court "in any proceeding in which his impartiality might reasonably be questioned," thus requiring recusal not only where the court has actual bias, but also where it has acted in such a way as to give the appearance of partiality to a reasonable person. 28 U.S.C. § 455; *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 113-14 (7th Cir. 1977). The appearance of impartiality is virtually as important as the fact of impartiality. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977).

### A.     A Court Must Avoid An Appearance Of Impropriety and Recuse When Its Impartiality Might Reasonably Be Questioned

33.     If an attorney believes that a judge is unfairly prejudiced, he may seek the judge's recusal. *In re New River Dry Dock, Inc.*, No. 06–13274–BKC–JKO, 2011 WL 4382023, *7 (Bankr. S.D. Fla. Sept. 20, 2011). A court always must be mindful of Canon 2(A), which directs that a court should act at all times in a manner that "promotes public confidence in the integrity and impartiality of the judiciary," as well as the general command of Canon 3(C)(1) that a court should be recused in a proceeding in which the "[court's] impartiality might reasonably be questioned." Committee on Codes of Conduct, Advisory Opinion No. 58 (2009).

34.     In this case, for the reasons described above and as set forth in the attached affidavits previously filed [DE-67-1 and DE-67-2] Judge Olson has not upheld the appearance of impartiality of the judiciary. This Court has worked with or allowed Ms. Weiner to manipulate the underlying bankruptcy case and the post-dismissal proceeding, and Judge Olson's impartiality is reasonably questioned.

35.     Ms. Weiner has entered into ex-parte communications with Judge Olson and with Ms. Lemmon while she was represented by Mr. Gindel, in apparent violation of Florida Bar

Rule 4-4.2. Judge Olson had allowed Ms. Weiner to act as a judicial officer, as seen through her evident management of this Court's docket and the decisions entered by this Court which have, on the record, been Ms. Weiner's determinations. See [DE-55, p. 10, ln. 14]. Furthermore, Judge Olson observed Ms. Weiner abuse the influence her office carries during the July 13th, 2011 ex parte proceeding, when she improperly endeavored to effect a change of Ms. Lemmon's counsel of record and solicited attorneys to represent Ms. Lemmon for free as part of an evident quid pro quo to procure her testimony against Mr. Gindel.

36.     This Court's tainted decisions are further shown through the orders entered as there is no evidentiary support or reasoning to enter an Order to Show Cause [DE-43, DE-45] and the Order Continuing August 29, 2011 Hearing to Show Cause to November 1, 2011 [DE-65], other than the misleading and unfounded opinions of Ms. Weiner. This Court has simply deferred to the orchestration, manipulation and opinions of Ms. Weiner. Movants believe that they cannot receive fair treatment due to the apparent partiality of this Court. By allowing Ms. Weiner to influence and manipulate this Court, the appearance of impartiality in this post-dismissal proceeding has been removed. The proceedings are tainted and recusal is mandated.

**B.     The Court Should Hear And Decide Matters, And Not Convey Or Permit Others To Convey The Impression That They Are In A Special Position Of Influence**

37.     A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings. Code of Conduct for United States Judges, Canon 3(A)(2). A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit others to convey the impression that they are in a special position to influence the judge. Code of Conduct for United States Judges, Canon

2(B).

38.     In this case, Judge Olson has worked in connection or deferred the management of the docket to Ms. Weiner, on July 13, 2011 and August 29, 2011. This Court has worked in connection with or has allowed Ms. Weiner to impose or enforce biased decisions through the power entrusted to judicial officers, such as: permitting Ms. Weiner to improperly orchestrate an extrajudicial "proceeding", without notice to Mr. Gindel or Mr. Golant by the "calling up of hearing" of the Lemmon matter on July 13, 2011, although the hearing had been cancelled, although Ms. Weiner and Judge Olson both were aware it had been cancelled, and both were aware that Mr. Gindel, the attorney of record for Ms. Lemmon was not present; proceeding to preside ex parte; hearing from Ms. Lemmon and from Weiner ex parte and allowing the matter to proceed without notice and without observation of any due process; entry of the unnecessary and unfounded Order to Show Cause [DE-43, DE-45] and Order Continuing August 29, 2011 Hearing to Show Cause to November 1, 2011 [DE-65].

39.     Judge Olson's orders reflect no supporting evidence to support a show cause hearing, and are clearly based upon the unfounded opinions and "suspicions" of Ms. Weiner.

40.     Because of Ms. Weiner's influence on Judge Olson, this Court has not independently heard, evaluated or decided on the issues in the post-dismissal proceeding, other than to convey to Movants that Ms. Weiner has inappropriately influenced the actions of Judge Olson, and Movants are unfairly prejudiced.

C.     **Because Judge Olson Has Consistently Asserted Personal Knowledge Concerning Disputed Evidentiary Facts, Recusal Is Mandatory Under Section 28 U.S.C. 455(a)**

41.     28 U.S.C § 455 (1)(1) mandates that a judge disqualify himself where he has "personal knowledge of disputed evidentiary facts concerning the proceeding."

42.     When Judge Olson commenced the August 29th, 2011 proceedings, this Court announced, before hearing any evidence whatsoever, that this Court believed that the funds that Mr. Golant had been ordered to reimburse to Ms. Lemmon had "…apparently [been] paid over to Mr. Gindel and that Mr. Gindel, without contacting Ms. Lemmon, withdrew the motion to reinstate the case, without consulting her, or informing her. Nobody has paid the money back to – as of the last hearing, to Ms. Lemmon." (See DE-62 Transcript of August 29th, 2011 hearing, p. 5 lines 16-17.) Counsel for Mr. Golant immediately pointed out that "[Judge Olson's] statement earlier that Stuart Golant did not refund the money, and that he paid it to Mr. Gindel is simply not what the evidence will show, and it's simply not true." *Id.* p. 6, line 10-11. Further, the check was later introduced into evidence [Transcript of August 29th, 2011 hearing, p. 63 lines 8-9 - p. 64 line 13] and evidences that it was cleared on July 13, 2011, prior to any of the referenced show cause hearings.

43.     Indeed, there was not so much as a scintilla of evidence offered during these proceedings that supported Judge Olson's assertion that any funds were paid to Mr. Gindel in connection with his representation of Ms. Lemmon in this action, or that Ms. Lemmon was not informed of the withdrawal of the motion or of the cancellation of the hearing or that the fee was paid to Ms. Lemmon immediately on July 13, 2011. Nevertheless, in the most recent Order in this matter, Judge Olson once again asserts that:

> "in furtherance of their arrangement to have Mr. Gindel appear as attorney of record in Stuart Golant's cases, Margery Golant and Robert Gindel willfully conspired to avoid having Golant & Golant P.A. disgorge fees under the terms of the court's April 7th, 2011 order

in this case."

[D.E. 65, p.4].

Later in that same Order, Judge Olson once again repeats this entirely unfounded assertion. [D.E. 65, p.6]. To the extent that order can be read as identifying any arguably improper conduct attributed to Ms. Golant and Mr. Gindel, it would be limited to that patently erroneous assertion that funds that were to be paid to Ms. Lemmon were instead paid to Mr. Gindel.

44.     Judge Olson's misconception regarding Mr. Gindel's asserted failure to communicate with Ms. Lemmon can be traced to the inappropriate, extrajudicial "proceeding" on July 13 when Ms. Weiner unilaterally called Judge Olson out from chambers to hear from Ms. Lemmon, without notifying Mr. Gindel. In that extrajudicial proceeding, this Court found facts based on inadmissable and improper testimony, through improper ex-parte contact, and under circumstances where Movants were not accorded *any* due process whatsoever.

45.     Moreover, the most recent order demonstrates that the Court's express, but entirely mistaken, belief that the funds which Judge Olson ordered Mr. Golant to pay to Ms. Lemmon were instead paid to Mr. Gindel has fundamentally tainted the proceedings. It is also clear that this belief is the motivating factor for the continued proceedings. The evidentiary hearing that concluded on August 29th, 2011 failed to yield any evidence supporting Judge Olson's factual position, yet the recent Order demonstrates Judge Olson's position has not changed. The evidentiary hearing on August 29th, 2011 concluded without any evidence that any funds whatsoever were ever paid to Mr. Gindel in connection with his representation of Ms. Lemmon in this action, yet Judge Olson continues to cling to his mistaken belief. More importantly, Judge Olson has now scheduled a

continuation of the concluded evidentiary hearing in an apparent search for evidence to support its

predetermined conclusion. Most importantly however, Judge Olson's opening remarks at the

August 29th, 2011 hearing, and the related statements in the most recent order, plainly demonstrate

that Judge Olson does believe he has knowledge concerning these highly disputed evidentiary facts,

and that he will not be dissuaded by actual evidence to the contrary. (See DE-62 Transcript of

August 29th, 2011 hearing, p. 5 line 16-17). The fact that Judge Olson openly expressed his belief

that he has knowledge concerning these entirely disputed evidentiary facts makes disqualification

mandatory under 28 U.S.C.455.

### D. The Standard By Which The Court's Conduct Is Measured Is A Reasonable Layman Standard, And By That Measure This Court Must Recuse

46. Recusal is required, by statute, "in any proceeding in which [a court's]

impartiality might be reasonably questioned," whether or not there is proof that a court was actually

biased. 28 U.S.C. § 455(a). If it would appear to a reasonable person that the court has knowledge

of facts that would give it an interest in the litigation then an appearance of partiality is created even

though no actual partiality exists because the court actually has no interest in the case or because the

court is pure in heart and incorruptible. *Liljeberg*, 486 U.S. at 860.

47. Recusal under section 455(a) is appropriate where "an objective, disinterested, lay

observer fully informed of the facts underlying the grounds on which recusal was sought would

entertain significant doubt about the [court's] impartiality ... ." *United States v. Patti*, 337 F.3d 1317,

1321 (11th Cir. 2003). As the Fourth Circuit stated in *United States v. DeTemple*,

> "[T]he hypothetical reasonable observer is not the judge himself or a
> judicial colleague but a person outside the judicial system. Judges,
> accustomed to the process of dispassionate decision making and

keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflict to be more innocuous than an outsider would."

*Id* at 287.

48.     Under the facts of our case, Judge Olson's impartiality is reasonably questioned by the initiation of these post-dismissal proceedings, and the way the proceedings have been conducted. Mrs. Golant was never counsel to the underlying bankruptcy case, or any bankruptcy case for that matter, and has only come in front of this Court to serve as a witness. Judge Olson's impartiality is reasonably questioned when entering an Order to Show Cause [DE-43] and Order Continuing the Show Cause Hearing [DE-65] to impose sanctions upon a person never serving as counsel, or in a representative capacity, in a bankruptcy case., accusing her of some sort of undefined misconduct and threatening serious sanctions. Similarly, Judge Olson and Ms. Weiner continue to cast aspersions on the manner in which Mr. Gindel represented Ms. Lemmon. However, the undisputed evidence shows that she was entirely uncooperative with him, that he took limited measures that caused her no harm and preserved her rights to proceed in the future, and that she was not an appropriate Chapter 13 candidate in any event.

E.      **Recusal Is Also Required By 28 U.S.C. § 144**

49.     While this Court has previously held that recusal under section 144 is limited to "a party to a proceeding in a district court" and therefore is not applicable to proceedings before a bankruptcy judge; *In Re Hussey,* 391 B.R., 911, 918 (Bank.R. S.D.Fla. 2008, movants assert that this is erroneous authority is inapplicable. Movants assert that, because the bankruptcy court is referred its authority by the district court, therefore United States Bankruptcy Judges are subject 28 U.S.C.

§ 144, in the same manner that United States District Court Judges are subject to that statute. In *Infolink, supra,* Judge Moreno recently performed an analysis on appeal from a motion for judicial disqualification of bankruptcy Judge A. Jay Cristol, pursuant to both section 455 and section 144. While Judge Moreno found that the requirements of section 144 were not met in the *Infolink* case, his analysis, demonstrates that the statute is applicable to a bankruptcy judge.

50.     In accordance with the foregoing facts, and the attached affidavit, Movants assert that this Court is biased, has engaged in inappropriate fact finding efforts, is subject to extra-judicial influence from Ms. Weiner, has obtained personal knowledge which will bear upon the proceedings, is biased and prejudiced against the positions of the Movants and therefore this Court cannot fairly consider the issues in this case. In accordance with section 144, this Court must recuse.

51.     Also in accordance with section 144, this Court cannot consider the Motion to Recuse and must refer the motion to another judge for consideration. In accordance with section 144, this Court does not properly consider the issue.

**WHEREFORE,** in order to carry out its duties under the Code of Judicial Conduct for United States Judges and the Federal Statutes cited above, remove the taint that has attached to these proceedings, and avoid the appearance of impropriety, this Court must recuse itself.

## II.     VACATUR OF A DISQUALIFIED COURT'S ORDERS IS REQUIRED

52.     In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the United States Supreme Court addressed circumstances in which a court must vacate the prior orders of a judge subject to recusal pursuant to 28 U.S.C. § 455. The Court fashioned a balancing test that requires consideration of the risk that the rulings pose to the integrity of the judicial system.

Specifically, a court must consider the risk of injustice to the parties in the case, the risk of injustice in other cases, and the risk of undermining the public's confidence in the judicial process. *Liljeberg*, 486 U.S. at 864.

53.     In the *Liljeberg* opinion, the Court established the clear and fundamental mandate that the integrity of the federal judiciary must be unquestionable in the eyes of the parties, the litigants, and most important, the public.   The Court required the judge to recuse himself retroactively and ordered that his prior orders be vacated because of the *appearance of impropriety* that his conduct created.  The Court found retrial necessary, even though there was no allegation that the judge acted with actual bias in the proceedings before him.  In this case, recusal without more does not remove the taint from this proceeding as substantial crucial orders have been entered against Movants. Judge Olson's relationship with Ms. Weiner as co-prosecutors creates an appearance of impropriety that puts public confidence in the judicial system at risk.  The appearance of impropriety in this case is significant, and clearly sufficient to require vacatur of all prior rulings.

54.     Under the second prong of the *Liljeberg* balancing test, the Court must take into account the interests of the parties of the litigation.  Here, vacatur best serves the interests of the Movants as it is improper for Movants to be subject to show cause hearings and possible sanctions, when there is no supportive evidence.

55.     This Court suggested through its September 29, 2011 Order [DE-65] that suspension from the bankruptcy court would be a possible sanction.  Mr. Gindel's practice is substantially performed in bankruptcy law and any restriction on his practice would not serve his interest, his clients, or dockets in his pending  cases, and would be excessively and unreasonably

punitive, given the complete lack of foundation therefor. Mrs Golant, not even practicing before this court and not a subject of any of the earlier orders to show cause, is similarly threatened, without any supporting evidence at all. Also, the influence by Ms. Weiner, and her stated agenda, that subjects Movants to show cause hearings, does not serve the interest of the dismissed bankruptcy case or the interests of justice. To permit these rulings to stand creates a risk of injustice, and sets a precedent that Banruptcy trustees can influence the Court, or rule from the gallery, concerning the imposition and determination of show cause hearings, and the sanctioning of attorneys. Additionally, the enforcement of any sanction to restrict Mr. Gindel and Mrs. Golant from future practice in the bankruptcy court would create a risk of injustice to Mr. Gindel's clients or the dockets of his pending cases.

**WHEREFORE,** in order to promote the integrity of the judicial system, and uphold the appearance of impartiality, this Court must vacate all show cause orders.

## CONCLUSION

To dispel all appearances of impropriety or bias, and protect the judicial process, Judge Olson must be recused and prior substantive rulings involving the parties must be vacated. Only recusal and vacatur will restore the public's and the Movants' confidence in the impartiality of this judicial proceeding.

## CERTIFICATE OF GOOD FAITH

Undersigned counsel hereby certifies that this Motion To Recuse pursuant to 28 U.S.C. 144 and 455 is submitted in good faith and on the good faith belief that recusal is appropriate for the reasons set forth above.

Respectfully submitted,

s/ Douglas C. Broeker
Douglas C. Broeker, Esquire
Florida Bar No. 306738
Doug@broekerlaw.com
SWEETAPPLE, BROEKER & VARKAS, P.L.
777 Brickell Avenue, Suite 600
Miami, Florida 33131
Tel.: (305) 374-5623
Fax.: (305) 358-1023
*Attorneys for Margery Golant, Esq. and
Robert Gindel, Esq.*

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

s/ Douglas C. Broeker
Douglas C. Broeker, Esquire
Florida Bar No. 306738

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such to: **Robert C Gindel, Esq.,** Attorney for Debtor, 1500 Gateway Blvd # 220, Boynton Beach, FL 33426; (561) 649-2344; robertgindel@robertgindel.com, **Robin R Weiner, Chapter 13 Trustee,** www.ch13weiner.com, POB 559007, Fort Lauderdale, FL 33355, 954-382-2001, and *U.S. Trustee,* **Office of the US Trustee,** 51 S.W. 1st Ave., Suite 1204, Miami, FL 33130, (305) 536-7285, and via U.S. Mail to: **Adria E. Quintela**, Chief Branch Disciplinary Counsel, Lake Shore Plaza II, 1300 Concord Terrace, Suite 130, Sunrise, Florida 33323 on this **28th** day of October, 2011.

> **s/ Douglas C. Broeker**
> Douglas C. Broeker, Esquire
> Florida Bar No. 306738